UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY CHARNLEY,<br><br>               Plaintiff,<br><br>   v.<br><br>THE BOEING COMPANY,<br><br>              Defendant. | Case No. C08-0130RSL<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

This matter comes before the Court on "Defendant's Motion for Summary Judgment." Dkt. # 21. Plaintiff alleges violations of the Family Medical Leave Act, the Washington Law Against Discrimination, and the public policies of the State of Washington. Boeing seeks dismissal of all of plaintiff's claims.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

"specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," and factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

**I. FAMILY MEDICAL LEAVE ACT ("FMLA"), 29 U.S.C. § 2601 *et seq*.**

The FMLA provides job security "for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601. Under the FMLA, employees are entitled to take up to twelve weeks of leave each year to address a serious health condition that makes the employee unable to perform the functions of his or her job. 29 U.S.C. § 2612(a)(1). An employer may not interfere with or deny FMLA-qualifying leave, nor may it consider absences that are covered by the FMLA as a "negative factor" in any subsequent employment decisions. 29 C.F.R. § 825.220(a) and (c).[1] An employee may bring a private lawsuit for violation of the FMLA "within two years after the last action which the employee contends was a violation of the Act . . . ." 29 C.F.R. § 825.400(b).

Plaintiff's FMLA claim is based on her allegation that she would not have been fired for excessive absences in February 2006 had Boeing properly designated her August 19, 2004, and September 8, 2004, absences as FMLA leave. Second Amended Complaint at ¶ 6.1.

---

[1] Significant changes to the governing regulations took effect on January 16, 2009. Unless otherwise noted, the citations in this Order are to the 2006 version of the Code of Federal Regulations.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -2-

Boeing argues that this claim is time-barred because plaintiff waited until November 6, 2006, to file this lawsuit.[2] The Court agrees. Plaintiff did not contest the characterization of her August 19, 2004, and September 8, 2004, absences. Although she clearly disagreed with the determination that her absences were not covered by FMLA (see Charnley Decl., Ex. 2 (handwritten note complaining that she had been mislead into requesting medical, rather than FMLA, leave)), plaintiff accepted her one-day suspension without pay and chose not to pursue legal action related to the determination. Boeing was therefore entitled to treat the characterization of those two absences as lawful and final when the two-year limitations period expired. See United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977).

Plaintiff argues that the termination of her employment on February 9, 2006, was the "last action" constituting a violation of the act for purposes of 29 C.F.R. § 825.400(b). Under plaintiff's theory, it was not until Boeing terminated her that her FMLA claim became ripe because it was then that Boeing considered absences covered by the FMLA as a "negative factor" in its employment decisions. 29 C.F.R. § 825.220(c). The fall 2004 absences had already generated an adverse employment action, however, namely plaintiff's one-day suspension without pay. All elements of the FMLA claim plaintiff is attempting to pursue here existed in 2004. Plaintiff waived her opportunity to challenge the earlier FMLA determinations when she allowed two years to expire without filing suit. As far as Boeing and the law were concerned, the fall 2004 absences had definitively been characterized as unexcused absences and were not FMLA leave for purposes of § 825.220(c). Boeing was therefore entitled to consider those absences when determining whether plaintiff had complied with its attendance policy. Allowing plaintiff to litigate the characterization of the fall 2004 absences now would defeat the policy of repose inherent in every statute of limitation. Ledbetter v. Goodyear Tire & Rubber

---

[2] The FMLA claim was not added until January 14, 2008. Plaintiff has not argued or attempted to show that Boeing's conduct was willful. 29 U.S.C. § 2617(c)(2).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -3-

Co., Inc., 550 U.S. 618, 127 S. Ct. 2162, 2170 (2007). Because Boeing should be able to rely on employment records that had gone unchallenged and regarding which no lawsuit could now be maintained, the Court finds that plaintiff's FMLA claim is time-barred.

**II. WASHINGTON LAW AGAINST DISCRIMINATION ("WLAD"), RCW Ch. 49.60**

The WLAD makes it unlawful for an employer to discharge a person from employment because of her gender. RCW 49.60.180(2). Plaintiff alleges that she was fired because her immediate supervisor, David Pendergrass, had shown a special interest in her, had made sexist comments at work, and had selected a man for a promotion over plaintiff. All of these events took place at least eight years before plaintiff's employment was terminated. Plaintiff argues, however, that the passage of time is irrelevant in this case because Mr. Pendergrass had no opportunity to discriminate against her during the intervening years: plaintiff transferred out of Mr. Pendergrass' work group in 1998, and they did not begin working together again until a few weeks before her termination.

Plaintiff argues that she need not utilize the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), to analyze her sex discrimination claim because she has offered direct evidence of discriminatory intent. Response at 13. See also Kastanis v. Educational Employees Credit Union, 122 Wn.2d 483, 491 (1993) ("In addition to the McDonnell Douglas test, the federal courts have recognized that a *prima facie* case of discrimination can be established by showing direct evidence of discriminatory intent.").[3] In order to establish a *prima facie* case of discrimination under the alternative test, "plaintiff must provide direct evidence that the defendant acted with a discriminatory motive and that the discriminatory motivation was a 'significant or substantial factor in an employment decision . . .

---

[3] The United States Supreme Court has determined that the distinction between direct and circumstantial evidence is irrelevant. Costa v. Desert Palace, 539 U.S. 90, 100 (2003). The Supreme Court of Washington, however, continues to adhere to the three step McDonnell Douglas analysis if a claim of disparate treatment is based on circumstantial evidence. Hegwine v. Longview Fibre Co., Inc., 162 Wn.2d 340, 353-54 (2007).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT     -4-

.'" Kastanis, 122 Wn.2d at 491 (quoting Buckley v. Hosp. Corp. of Am., Inc., 758 F.2d 1525, 1530 (11th Cir. 1985)). Plaintiff has offered no direct evidence regarding Boeing's motivation at the time of her termination. Plaintiff asks the Court to infer from comments made and actions taken eight years earlier that Mr. Pendergrass reported plaintiff's February 2006 absences to human resources and did not seriously consider her request for "shop leave" because he does not like women. If plaintiff had direct evidence of Mr. Pendergrass' motivation in February 2006, such tenuous inferences would not be necessary. Nor does plaintiff offer any evidence regarding Boeing's processing of her absences or the motivation of the human resources department when it determined that termination was appropriate as the third step of progressive discipline. Because plaintiff has not provided direct evidence from which a reasonable fact finder could conclude that sex discrimination was a substantial factor in the decision to terminate her, any attempt to proceed on her WLAD claim under the alternative method fails.

The Court therefore considers plaintiff's claims under the McDonnell Douglas standard. To establish a *prima facie* case of sex discrimination under this test, plaintiff must demonstrate that (a) she is a member of a protected class, (b) she was satisfactorily performing her job, (c) she suffered an adverse employment action, and (d) similarly situated employees who were not in the protected class were treated more favorably. Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 362-64 (1988). Plaintiffs' initial burden is minimal and need only give rise to an inference of unlawful discrimination. Establishing a *prima facie* case entitles plaintiff to a presumption that the employer's conduct, if left unexplained, is more likely than not "based on a discriminatory criterion illegal under the Act." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 575 (1978). See also Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 149-50 (2004).

Once the presumption arises, the burden shifts to defendants to "produce evidence that the employment action was based on legitimate, nondiscriminatory reasons." Riehl, 152 Wn.2d at 150. If the employer satisfies its burden of production, the presumption of

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -5-

discrimination raised by the *prima facie* showing falls away and plaintiff may avoid summary judgment only by producing enough evidence to allow a reasonable factfinder to conclude that "(1) the employer's reasons have no basis in fact; or (2) even if the reasons are based on fact, the employer was not motivated by the reasons; or (3) the reasons are insufficient to motivate the adverse employment decision." Chen v. State, 86 Wn. App. 183, 190 (1997).[4]

Plaintiff is a member of a protected class, her employment was terminated, and no evidence has been provided suggesting that she was not a capable Quality Assurance Inspector. Plaintiff has not, however, identified another employee who was treated differently in a similar situation. The only evidence in the record that touches on how discipline for excessive absences has been applied at Boeing is the attendance policy (Rudolph Decl., Ex. A) and Rhesa Gentry's statement that "[t]ypically we do not provide excused absences to anybody that has corrective action on file" (Bean Decl., Ex. 7 at 37). Both items suggest that persons in plaintiff's situation, whether within the protected class or not, are not eligible for shop leave and are subject to termination. Absent some evidence that a male employee at the third stage of progressive discipline for unexcused absences was not terminated, plaintiff has not raised an inference of discriminatory motive.

Even if the Court were to assume that plaintiff has presented *prima facie* evidence of discrimination, Boeing has offered a legitimate, non-discriminatory reason for plaintiff's termination. Plaintiff failed to comply with Boeing's attendance policy and had accrued too many unexcused absences in the period preceding her termination. Plaintiff does not argue that the proffered reason for her termination was merely a pretext for sex discrimination. Instead, she focuses on Mr. Pendergrass' comments and actions eight years earlier. Plaintiff does not

---

[4] Under federal law, plaintiffs can avoid judgment and overcome defendants' legitimate nondiscriminatory reason for their actions by showing either (1) that defendants' proffered reasons for the adverse employment action were false or (2) that the true reasons for the action were discriminatory in nature. Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -6-

challenge the fact that she was absent on February 2 and February 3, 2006, or argue that excessive absences in violation of Boeing's attendance policy are insufficient to motivate a dismissal. Boeing's justification for its conduct therefore had a factual basis, and Mr. Pendergrass' state of mind in 1998 does not suggest, much less show, that the unexcused absences did not motivate Boeing's termination decision. Plaintiff has not produced evidence from which a reasonable fact finder could conclude that Boeing's non-discriminatory reason for firing her (excessive absences) was a pretext. Her sex discrimination claim therefore fails as a matter of law.[5]

Plaintiff also asserts that her termination was retaliatory. The Washington Law Against Discrimination makes it an unfair practice "for any employer . . . to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden in this chapter . . . ." RCW 49.60.210(1). To prove her claim of retaliation, plaintiff must show that (a) she was engaged in statutorily protected activity, (b) there was an adverse employment action, and (c) retaliation was a substantial factor motivating the adverse action. Kahn v. Salerno, 90 Wn. App. 110, 128-29 (1998). Once a *prima facie* case of retaliation is presented, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. Renz v. Spokane Eye Clinic, P.S., 114 Wn. App. 611, 618 (2002). Plaintiff bears the ultimate burden of persuasion, however, and must raise an inference of retaliation to withstand a motion for summary judgment.

In or before 1998, plaintiff complained that Mr. Pendergrass' conduct constituted sexual harassment and that he had promoted a man to a position she should have had. Plaintiff argues that Mr. Pendergrass engineered her termination in February 2006 in retaliation for these

---

[5] Plaintiff has not pursued the age discrimination claim asserted in the Second Amended Complaint.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -7-

complaints.[6] It is undisputed that plaintiff was, in fact, absent on February 2 and February 3, 2006, and that Mr. Pendergrass had a duty, as her manager, to monitor her attendance. There is no evidence that Mr. Pendergrass knew that plaintiff had already been given two corrective action memoranda for unacceptable attendance when he reported her absences in 2006. Nor is there any evidence that Mr. Pendergrass knew that plaintiff had accused him of sexual discrimination or harassment eight years earlier. Plaintiff says only that Mr. Pendergrass "gave a male worker a promotion that I deserved. I grieved that promotion and won." Charnley Decl. at ¶ 9. The grounds on which the grievance was filed are not identified. Nor is there any indication that Mr. Pendergrass was aware that plaintiff had complained to George Watkins about him or that she had requested a transfer away from his unit because of sexual harassment concerns.

Lacking direct evidence that Mr. Pendergrass was aware of her protected activity, plaintiff points to an e-mail exchange she had with Mr. Pendergrass shortly before they began working together in 2006 and the fact that Mr. Pendergrass was on vacation the day plaintiff was fired. It is not clear how either of these items gives rise to an inference of retaliatory intent. The e-mail conversation appears to be an exchange of pleasantries: plaintiff wrote, "If you need any help with anything just let me know . . . You are a good manager Dave," to which Mr. Pendergrass responded, "Thanks Penny. When I looked at the org chart a couple weeks ago and saw that I would get to work with you again I was smiling." Charnley Decl., Ex. 10. Plaintiff asserts, without explaining, that "[a] jury should consider Pendergrass' intent" when he wrote this e-mail. When asked during discovery what he meant by this communication, Mr. Pendergrass said he was simply trying to be nice, a response that is consistent with the nature and tone of the e-mails. Plaintiff suggests, based on nothing but unreasonable speculation, that

---

[6] Plaintiff asserts that Mr. Pendergrass brought about her termination by reporting her absences to human resources and failing to refer plaintiff's request for "shop leave" to a second level manager.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT         -8-

the e-mail reflects an intent to retaliate. Response at 15-16. There is even less relevance in the fact that Mr. Pendergrass was on vacation the day plaintiff was fired. On February 7, 2006, Mr. Pendergrass reported plaintiff's absences to human resources, the reason for those absences, and the lack of leave time to cover them: it was not until later that day that he learned that plaintiff had received two corrective action memoranda in the past and may be subject to termination. Bean Decl., Ex. 5. Although it is not clear when the final decision to terminate plaintiff was made, she was not at work on February 7th and 8th. When she returned on February 9th, Mr. Pendergrass was on vacation, and another manager signed the termination memorandum. Charnley Decl., Ex. 6. These facts do not raise an inference, one way or the other, regarding Mr. Pendergrass' or Boeing's motivation.

Even if the Court assumes that a reasonable fact finder could find that Mr. Pendergrass knew of plaintiff's earlier complaints and harbored ill will toward her because of them, "an employee may still be terminated for proper cause even when engaged in protected activity." Kahn, 90 Wn. App. at 129. As with the discrimination claim, Boeing has offered a legitimate reason for plaintiff's termination and plaintiff has not shown pretext. Defendant is entitled to judgment as a matter of law on plaintiff's retaliation claim

### III. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

Plaintiff argues that her termination violated Washington's public policy against terminating employees who are absent because of an industrial injury. Response at 8. To succeed on her claim of wrongful discharge in violation of public policy, plaintiff must establish four necessary elements: (a) that a clear public policy exists; (b) that Boeing's conduct jeopardized the public policy; (c) that the public-policy-linked conduct caused the dismissal; and (d) that defendants have not presented an overriding justification for the dismissal. Roberts v. Dudley, 140 Wn.2d 58, 64-65 (2000). In support of the claimed public policy, plaintiff cites Wilmot v. Kaiser Aluminum and Chem. Corp., 118 Wn.2d 46 (1991). Wilmot, however,

recognizes a "public policy prohibiting retaliatory discharge for seeking workers' compensation benefits," which is narrower than the policy asserted by plaintiff. A public policy tied to the mere fact of injury would force employers to excuse any and all absences following a workplace accident and would prevent an employer from disciplining employees who are unreasonably clumsy or who fail to comply with health and safety regulations. This is clearly not the policy of the State of Washington. See RCW 51.48.025(1) (identifying as legitimate reasons for discharge "the worker's failure to observe health or safety standards adopted by the employer, or the frequency or nature of the worker's job-related accidents.").

The issue, then, is not whether plaintiff suffered an industrial injury to which her December 2, 2003, absence was related, but whether plaintiff's termination was substantially motivated by a claim for workers' compensation benefits. There is no indication that plaintiff's December 2, 2003, absence was related to a workers' compensation claim. The doctor's note plaintiff supplied with her response memorandum simply says that "Penny R. Charnley had an appointment with me today 12-2-2003." Charley Decl., Ex. 7. The doctor's note is dated December 2, 2002, but identifies the appointment date as December 2, 2003. Boeing has not been able to locate any medical records or notes from Dr. Wright for December 2, 2003. Moriarty Decl., Ex. A. In addition, Boeing has provided evidence that its third-party administrator for workers' compensation claims made no payments for plaintiff during November or December 2003. Evans Decl., Ex. A. Plaintiff has previously indicated that the absence had nothing to do with a workers' compensation claim (or a workplace injury, for that matter): "[t]he 1.2 hours on 12/02/2003 I'm sure was LWOP for going to the hospital or transporting my son." Sittnick Decl., Ex. C at 67. The Court can find no evidence of a workplace accident report or workers' compensation claim during this time period that could trigger the public policy identified in Wilmot. Plaintiff has therefore failed to show that Boeing's conduct has jeopardized a clearly-established public policy.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -10-

Assuming, for purposes of this motion, that the public policy of Washington precludes employers from punishing employees because they suffered a workplace injury (even if not the subject of a workers' compensation claim), such protection is not absolute. An employer may still discharge an employee under a neutral attendance policy as long as the injury is not a significant factor motivating the employer. <u>Wilmot</u>, 118 Wn.2d at 74. Given the state of the record regarding plaintiff's December 2, 2003, absence, no reasonable fact finder could conclude that plaintiff's termination was substantially motivated by her workplace injury. It is not clear today, much less in February 2006, that the December 2, 2003, absence was in any way related to a workplace injury. When Boeing looked back over its employment records to count the number of unexcused absences plaintiff had accumulated, there was no obvious link to a workplace injury or any other reason for Boeing to disregard the December 2, 2003, absence. Plaintiff has not challenged Boeing's interpretation of its attendance policy or offered evidence of pretext. She has not, therefore, raised a triable issue of fact regarding whether her workplace injury was a substantial factor in her dismissal.

For all of the foregoing reasons, defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment against plaintiff and in favor of defendant.

Dated this 5th day of February, 2009.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -11-